IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| THE CRACKED EGG, LLC., | ) | Bankruptcy No. 20-22889-JAD |
| | ) | |
| Debtor. | ) | Chapter 11 |
| ─────────────────────── | X | |
| | ) | |
| COUNTY OF ALLEGHENY, a political subdivision of the Commonwealth of Pennsylvania, | ) ) ) ) | Related to ECF No. 47 |
| | ) | |
| Movant, | ) | |
| | ) | |
| - v - | ) | |
| | ) | |
| THE CRACKED EGG, LLC, | ) | |
| | ) | |
| Respondent. | ) | |
| ─────────────────────── | X | |

**<u>MEMORANDUM OPINION</u>**

The matter before the Court is a Motion for Relief From Automatic Stay filed by the County of Allegheny, through the Allegheny County Health Department (collectively, the "<u>County Health Department</u>"). The Motion for Relief From Automatic Stay is a core proceeding over which this Court has the requisite subject-matter jurisdiction to enter final judgment pursuant to 11 U.S.C. §§ 157(b)(1), 157(b)(2)(A), 157(b)(2)(G), 157(b)(2)(O), and 1334(b).

The gist of the motion filed by the County Health Department is that this agency requests relief from stay to pursue enforcement proceedings against The Cracked Egg, LLC (the "<u>Debtor</u>") for violation of various mitigation measures

ordered by the Commonwealth of Pennsylvania to protect against the spread of Covid-19.

By way of background, Covid-19 is a highly infectious, communicable disease caused by a new (or novel) coronavirus not previously seen in humans. The Covid-19 virus is transmitted predominantly by respiratory droplets generated when people cough, sneeze, talk or breathe. See M.Rae, Inc. v. Wolf, Civil Action No. 1:20-CV-2366, 2020 WL 7642596, at *7 (M.D. Pa. Dec. 23, 2020). It is widely accepted in the scientific community that masks help contain the spread of the Covid-19 virus by reducing transmission of those droplets. Id. It has also been reported that "[i]ndoor venues, where distancing is not maintained and consistent use of masks is not possible (e.g., restaurant dining) have been identified as particularly high risk scenarios" for virus transmission. Id.

Covid-19 has "caused a global pandemic of unprecedented scale." Id. at *1. As of December 23, 2020, the World Health Organization reported 76,858,506 confirmed cases and 1,711,498 deaths worldwide. Id. at *4. The Centers for Disease Control and Prevention (the "CDC") reported 18,170,062 cases and 321,734 deaths in the United States. Id. As of late December of 2020, the Commonwealth of Pennsylvania Department of Health recorded 581,156 cases and 14,442 deaths. Id.

The pandemic has affected all 67 counties within the Commonwealth of Pennsylvania, including Allegheny County where The Cracked Egg, LLC operates

its restaurant business. Id.  The number of cases and deaths have continued to grow locally, nationally, and globally, and the numbers are even greater as of the writing of this Memorandum Opinion.  Indeed, the most recent data on the CDC website with respect to the United States reflects 20,732,404 cases and 352,464 deaths nationwide.[1]  The Pennsylvania Department of Health reports on its website 673,915 total cases statewide and 16,546 deaths.[2]  The most recent data regarding Covid-19 cases in Allegheny County, Pennsylvania reflects 56,827 cases and 1,011 deaths.[3]

Faced with the unprecedented pandemic, Pennsylvania Governor Tom Wolf determined on March 6, 2020 that Covid-19 constituted a threat of imminent disaster to the health and citizens of the Commonwealth of Pennsylvania, and he also issued a statewide disaster declaration.  Allegheny County Council ratified the emergency declaration thereby declaring a county-wide emergency on March 12, 2020.

In July of 2020, Pennsylvania's Secretary of Health, Rachel Levine, M.D., issued certain orders requiring the use of face coverings at indoor locations where

---

[1] See CDC COVID Data Tracker, Centers for Disease Control and Prevention, http://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days (last visited Jan. 6, 2021).

[2] See COVID-19 Data for Pennsylvania: COVID-19 Dashboard, Pennsylvania Department of Health, https://www.health.pa.gov/topics/disease/coronavirus/Pages/Cases.aspx (last visited Jan. 6. 2021).

[3] See COVID-19, Allegheny County, https://www.alleghenycounty.us/Health-Department/Resources/COVID-19/COVID-19.aspx (last visited Jan. 6. 2021).

the public is generally admitted and while engaged in work, including at restaurants (collectively, the "Universal Face Covering Order"). The Secretary of Health also issued an order which required restaurants to limit occupancy to 25% of stated fire code maximum occupancy for indoor dining and to limit occupancy at discrete indoor events or gatherings to 25 persons (the "Mitigation Order" and collectively with the Universal Face Covering Order, the "Covid-19 Control Measures Orders").[4] The Mitigation Order also counted staff towards the occupancy limits, and required physical distancing, masking, and other mitigation measures to protect workers and patrons.

It has been represented that the Mitigation Order contains various provisions, including the command that: "All local officials currently involved or able to be involved in the Commonwealth's enforcement efforts are called upon to enforce these critical mitigation measures." See Motion for Relief From Automatic Stay (the "Motion") at ¶ 17.

It has also been represented that the County Health Department is statutorily charged with enforcement of the laws relating to public health, as well as food and environmental safety, within Allegheny County. Motion at ¶ 1 (citing Pennsylvania's Local Health Law Administration Law, 16 P.S. §§ 12001-12029).

---

[4] The maximum capacity component of the Mitigation Order has been adjusted from time to time by the Commonwealth of Pennsylvania depending upon the surge or anticipated surge of Covid-19 cases. Because this Memorandum Opinion only addresses whether the County Health Department is excepted from the automatic stay pursuant to 11 U.S.C. § 362(b)(4), the modifications to the Mitigation Order and related items are not germane to the outcome of the Motion for Relief From Automatic Stay.

Similarly, it has been averred that the County Health Department is statutorily directed to, among other things, execute "the rules and regulations of the State Department of Health and other departments, boards, or commissions of the State government." Motion at ¶ 5 (citing 16 P.S. § 12010(a)). The County Health Department additionally has the primary responsibility for the prevention and control of communicable and non-communicable diseases in Allegheny County. Motion at para 6 (citing 35 P.S. § 521.3(a)).

*Sub judice*, it is uncontested that beginning sometime prior to the commencement of the instant bankruptcy case and continuing through the date of this Memorandum Opinion, the Debtor has violated (and continues to violate) the Covid-19 Control Measure Orders. For example, public facing employees of the Debtor have been observed not wearing face masks and patrons have been observed being admitted into the Debtor's restaurant and bar area not wearing masks. See Motion at ¶¶ 19 and 20 and Debtor's Response, ECF No. 51, at ¶¶ 19 and 20. It has also been alleged that the Debtor is not honoring physical distancing and other requirements set forth in the Covid-19 Control Measure Orders.

Given the alleged violations, the County Health Department suspended the Debtor's operating permit in August of 2020 and ordered the Debtor's facility to close, which the Debtor has continued to ignore. Given the Debtor's failure to adhere to the County Health Department's directives, the County Health

Department commenced a civil enforcement action against the Debtor in the Court of Common Pleas of Allegheny County, Pennsylvania at No. GD-20-9809.[5] This action was filed on September 4, 2020, and was pending when the Debtor filed the instant bankruptcy case on October 9, 2020.

Given the pending bankruptcy, the County Health Department requests that the automatic stay be lifted so that it may prosecute its enforcement action against the Debtor. Upon review of the language of the pertinent statute, and the circumstances of this case, this Court concludes that the County Health Department's motion has merit and should be granted.

The mere fact that a debtor has filed for bankruptcy protection does not obviate the requirement that a debtor abide by applicable law. Congress has recognized as much when it passed 28 U.S.C. § 959(b), which states that:

> . . . a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

The Court also observes that the automatic stay in bankruptcy is a shield and not a sword designed to afford a party with a litigation advantage. While the automatic stay in bankruptcy is designed to afford the honest but unfortunate

---

[5] The civil enforcement action was removed to this Court, and the County Health Department has filed a motion asking that the matter be remanded. Since the action properly belongs before the Court of Common Pleas of Allegheny County, an order shall be entered remanding the matter to the state court for adjudication.

debtor with respite from creditor collection activities, the extent or reach of the automatic stay is not absolute. When Congress enacted the Bankruptcy Code it was well aware that:

> the stay provision [of 11 U.S.C. § 362(a)] was particularly vulnerable to abuse by debtors improperly seeking refuge under the stay in an effort to frustrate necessary governmental functions. To combat the risk that the bankruptcy court would become a sanctuary for [wrongdoers] Congress enacted the police and regulatory power exception to the automatic stay.

U.S. v. Nicolet, 857 F.2d 202, 207 (3d Cir. 1988)(citing Commodity Futures Trading Comm'n v. Co Petro Mktg. Group, Inc., 700 F.2d 1279, 1283 (9th Cir. 1983).

Accordingly, Congress wrote limitation provisions into the Bankruptcy Code. These limiting provisions reflect Congress's intention that the automatic stay does not provide a debtor in bankruptcy with a *carte blanche* excuse to avoid health and safety regulations. Section 362(b)(4) of the Bankruptcy Code provides as much, and this statute expressly provides that the automatic stay does not apply to:

> the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power.

See 11 U.S.C. § 362(b)(4). As the Third Circuit Court of Appeals wrote:

> This exception discourages debtors from submitting bankruptcy petitions either primarily or solely for the purpose of evading impending governmental efforts to invoke the governmental police powers to enjoin or deter ongoing debtor conduct which would seriously threaten the public safety and welfare . . .

In re Nortel Networks, Inc., 669 F.3d 128, 137 (3rd Cir. 2011)(quoting In re McMullen v. Sevigny (In re McMullen), 386 F.3d 320, 324-25 (1st Cir. 2004)).

Application of this law to the facts of this case reveals not much of a dispute about bankruptcy law. The Court reaches this conclusion because the Debtor has not contested that (a) Allegheny County is a governmental unit having standing under section 362(b)(4), (b) to the extent that the Covid-19 Control Measure Orders are valid, enforcement of them is a proper exercise of police and regulatory power by the County Health Department, and (c) the purpose of the County Health Department's enforcement action is to protect public health and safety of the citizens of Allegheny County as opposed to being an action primarily seeking to protect a governmental pecuniary interest such as collecting a debt. See Nortel Networks, 669 F.3d at 137-42.

Rather, the Debtor's challenge to the Motion for Relief From Automatic Stay, is an overt challenge the legality or constitutionality of the Covid-19 Control Measure Orders. In essence, the Debtor's defense to the motion is to essentially request that this Court declare the Covid-19 Control Measure Orders un-

constitutional and therefore deny the Motion for Relief From Automatic Stay because it is *ultra vires*. The Court, however, declines to accept the Debtor's invitation to insert itself into the fray regarding the ultimate merits of the Covid-19 Control Measure Orders. The Court renders this decision for a couple of reasons.

First, nothing in section 362(b)(4)'s police or regulatory power exception to the automatic stay conditions its application upon this Court making a gatekeeper determination as to whether an exercise of police or regulatory power is proper in the first instance. The plain language of 11 U.S.C. § 362(b)(4) even suggests otherwise when it excepts from the automatic stay any "commencement" or "continuation" of legal action by the governmental entity. The use of the words "commencement" and "continuation" demonstrates that the exception includes litigation that is far from final adjudication. It also reflects the fact that parties are left to their relative non-bankruptcy law claims and defenses (each of which are to be decided in the appropriate court of competent jurisdiction).

Second, this Court's viewpoint is consistent with United States Supreme Court precedent. Almost three decades ago the Supreme Court rejected the argument that courts applying 11 U.S.C. § 364(b)(4) must first decide whether the proposed exercise of police or regulatory power is "legitimate," finding that such a "broad reading… would require bankruptcy courts to scrutinize the validity of every administrative or enforcement action brought against a bankrupt entity." Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc., 502 U.S. 32, 40, 112

S.Ct. 459, 116 L.Ed.2d 358 (1991). The Court held that "[s]uch a reading is problematic, both because it conflicts with the broad discretion Congress has expressly granted many administrative entities and because it is inconsistent with the limited authority Congress has vested in bankruptcy courts." Id.

Third, section 362(b)(4)'s terms are plain and unambiguous and this Court is powerless to re-write them to add the gatekeeper function that the Debtor is requesting. The United States Supreme Court instructed that:

> In interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.

Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992)(internal citations and quotation marks omitted).

Fourth, to the extent this Court has a general equitable power under 11 U.S.C. § 105(a) to entertain the Debtor's request, the outer boundaries of this Court's equitable power is the Bankruptcy Code itself. Here the United States Supreme Court has also instructed that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206 (1988).

Fifth, even if this Court possesses the equitable powers the Debtor suggests,

substantial question or uncertainty remains with respect to the Debtor's constitutional challenge to the Covid-19 Control Measure Orders. It is true that in County of Butler v. Wolf, Civil Action No. 2:20-cv-677, 2020 WL 5510690 (W.D. Pa. Sept. 14, 2020) the United States District Court held that certain Covid-19 lockdown restrictions in Pennsylvania violated federal constitutional principles. The decision, however, did not address all of the elements of the Covid-19 Control Measure Orders, such as the requirement of face coverings. The decision in Butler v. Wolf also is presently on appeal, and the Third Circuit Court of Appeals has stayed the trial court's judgment. County of Butler v. Governor of Pennsylvania, No. 20-2936, 2020 WL 5868393 (3rd Cir. October 1, 2020).

Subsequent to Butler v. Wolf, other federal courts in cases involving restaurants and bars have called the decision of the District Court into question. These cases include AJE Enter. LLC v. Justice, Civil Action No. 1:20-CV-229, 2020 WL 6940381 (N.D. W.Va. Oct. 27, 2020) and M. Rae, Inc. v. Wolf, supra. These courts hold that the constitutional challenges posed by the plaintiff's in those cases do not have a likelihood of success. In reaching such a conclusion, these courts appear to conclude that state mitigation efforts to curtail the spread of Covid-19 are subject to "rational basis review." Utilizing that legal framework, the courts presume that state Covid-19 mitigation efforts are constitutional, making it incumbent upon the plaintiffs to negate "every conceivable basis which might support it.'" AJE Enter. LLC v. Justice, 2020 WL 6940381, at *2 (quoting

Armour v. City of Indianapolis, 566 U.S. 673, 681 (2012)).

Not to be lost in the myriad of case-law emerging during the Covid-19 pandemic are the words of Chief Justice John Roberts, who wrote the following in his concurring opinion in South Bay United Pentecostal Church v. Newsom, 140 S.Ct. 1613 (2020):

> The precise question of when restrictions on particular social activities should be lifted during the pandemic is a dynamic and fact-intensive matter subject to reasonable disagreement. Our Constitution principally entrusts "[t]he safety and the health of the people" to the politically accountable officials of the States "to guard and protect." Jacobson v. Massachusetts, 197 U.S. 11, 38, 25 S.Ct. 358, 49 L.Ed. 643 (1905). When those officials "undertake[ ] to act in areas fraught with medical and scientific uncertainties," their latitude "must be especially broad." Marshall v. United States, 414 U.S. 417, 427, 94 S.Ct. 700, 38 L.Ed.2d 618 (1974). Where those broad limits are not exceeded, they should not be subject to second-guessing by an "unelected federal judiciary," which lacks the background, competence, and expertise to assess public health and is not accountable to the people. See Garcia v. San Antonio Metropolitan Transit Authority, 469 U.S. 528, 545, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985).

See South Bay, 140 S.Ct. at 1613-14.

In reciting the case-law set forth above, this Court is not undertaking an exhaustive analysis of the constitutional issues presented by the Debtor's challenge to the Covid-19 Control Measure Orders. The Court is merely pointing out the fact that the Debtor's case is hardly the proverbial "slam-dunk." Indeed, in rendering this decision, the Court is sympathetic to the fact that the Debtor's

business (like lots of businesses throughout the United States) has suffered because of the pandemic. The Court also recognizes that the police power of the Commonwealth is not absolute. As one court wrote: "While the law may take periodic naps during a pandemic, we will not let it sleep through one." Maryville Baptist Church, Inc. v. Beshear, 957 F.3d 610, 615 (6th Cir. 2020).

In essence, given the fact that the Debtor's objection to the Covid-19 Control Measure Orders does not lend itself to an obvious ruling in the Debtor's favor, the Court's discretion is that it is better to leave the determination of these issues to the court of competent jurisdiction that will ultimately preside over this dispute. This conclusion does not prejudice the Debtor, because the Debtor is free to defend itself and raise its constitutional defenses in those proceedings. In addition, the Debtor currently is a plaintiff in a civil rights case against the County in the United States District Court for the Western District of Pennsylvania filed at No. 2:20-cv-01434-RJC. Nothing prevents the Debtor from asking the United States District Court Judge in that case for leave of court to amend the complaint to pursue injunctive relief to the extent the Debtor believes it can state and prove a claim for the same.

For the reasons set forth above, an order shall be entered that grants the Motion for Relief From Automatic Stay filed by the County Health Department.

Date: January 7, 2021

_____
The Honorable Jeffery A. Deller
United States Bankruptcy Judge

cc:  James R. Cooney, Esq., counsel to the Debtor
     Viyalakshmi Patel, Esq., counsel to the County of Allegheny

FILED
1/7/21 9:57 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA